# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| FIRE AND POLICE RETIREE HEALTH CARE FUND, SAN ANTONIO, |  |
| *Plaintiff* |  |
| v. | Civil Action No. _____ |
| RICHARD D. SACKLER; PURDUE PHARMA, L.P.; PURDUE PHARMA, INC.; THE PURDUE FREDERICK COMPANY, INC.; RHODES PHARMACEUTICALS, L.P.; INSYS THERAPEUTICS, INC.; INSYS MANUFACTURING LLC; TEVA PHARMACEUTICAL INDUSTRIES, LTD.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, INC., n/k/a JANSSEN PHARMACEUTICALS, INC.; NORAMCO, INC.; ENDO HEALTH SOLUTIONS, INC.; ENDO PHARMACEUTICALS, INC.; QUALITEST PHARMACEUTICALS, INC.; ALLERGAN PLC, f/k/a ACTAVIS PLC, f/k/a ALLERGAN FINANCE LLC, f/k/a ACTAVIS, INC., f/k/a WATSON LABORATORIES, INC.; ACTAVIS LLC; ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC.; MALLINCKRODT LLC; MCKESSON CORPORATION; CARDINAL HEALTH, INC.; and |  |

| |
|---|
| AMERISOURCEBERGEN CORPORATION; ABBOTT LABORATORIES; CVS HEALTH CORPORATION; CVS PHARMACY, INC.; CVS TN DISTRIBUTION L.L.C; WALGREENS BOOTS ALLIANCE, INC.; WALGREEN CO. |
| *Defendants* |

## NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendants CVS Health Corporation, CVS Pharmacy, Inc. and CVS TN Distribution L.L.C. ("CVS") remove this action to this Court from the 152nd Judicial District Court of Harris County, Texas. As grounds for removal, CVS states:

## I.    NATURE OF REMOVED ACTION

1.    The Plaintiff in this action is the Fire and Police Retiree Health Care Fund, San Antonio.

2.    On March 26, 2019, Plaintiff filed this action in the 288th Judicial District Court of Bexar County, Texas. The court assigned the case Cause No. 2019-CI-06151.

3.    On April 29, 2019, Plaintiff filed a First Amended Complaint ("FAC").

4.    On May 15, 2019, this action was transferred from the trial court to the MDL Pretrial Court pursuant to Rule of Judicial Administration 13.5(e).

5.    The action was assigned to the Honorable Robert Schaffer of the 152nd Judicial District Court of Harris County, Texas and assigned Cause No. 2019-33724.

6858221.1

6.      The FAC asserts claims against four groups of Defendants.

7.      The first group consists of just one individual: Richard S. Sackler. (Plaintiff's original complaint also named Jonathan D. Sackler, Mortimer D.A. Sackler, Kathe A. Sackler, Ilene Sackler Lefcourt, Beverly Sackler, Theresa Sackler, David A. Sackler, and Trust for the Benefit of Members of the Raymond Sackler Family.)

8.      The second group of defendants consists of the Manufacturer Defendants: Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company, Inc.; Rhodes Pharmaceuticals. L.P.; Insys Therapeutics, Inc.; Insys Manufacturing LLC; Teva Pharmaceuticals USA, Inc.; Teva Pharmaceutical Industries Ltd. (incorrectly named as "Teva Pharmaceutical Industries, Ltd." in the FAC); Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceutical, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Noramco, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Qualitest Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Allergan plc f/k/a Actavis plc; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Actavis, LLC; and Mallinckrodt, LLC (collectively, the "Manufacturer Defendants"). FAC ¶¶ 30-59.

3

9.     The third group of defendants consists of McKesson Corporation; Cardinal Health, Inc.; AmeriSourceBergen Drug Corporation; and Abbot Laboratories[1] (collectively, the "Distributor Defendants"). FAC ¶¶ 60-78.

10.     The fourth group of defendants consists of CVS Health Corporation; CVS Pharmacy, Inc.; CVS TN Distribution, L.L.C. (collectively, "CVS"); Walgreens Boots Alliance; and Walgreen Co. (collectively with CVS, the "Retailer Defendants"). FAC ¶¶ 98-104.

11.     Although Plaintiff asserts state law causes of action, Plaintiff pleads, among other things, that the Distributor Defendants "failed to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates as required under the Controlled Substances Act." FAC ¶ 24.

12.     Because the duties governing reporting and shipping "suspicious" opioid orders arise, if at all, from the federal Controlled Substances Act ("CSA") and its implementing regulations, Plaintiff's allegations of violations of federal law form the basis for its claims.

13.     On December 5, 2017, the Judicial Panel on Multidistrict Litigation (JPML) formed a multidistrict litigation (MDL) and transferred opioid-related actions to the Honorable Dan A. Polster of the Northern District of Ohio pursuant to 28 U.S.C. § 1407. *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017). More than 1,900 opioid-related actions are pending in the MDL, including actions transferred from this Court.

---

[1] Abbott Laboratories is identified as a "Distributor Defendant" in the FAC, but Abbott has never been a distributor of opioids.

4

14.     Defendants intend to tag this case immediately for transfer to the MDL.

15.     In accordance with 28 U.S.C. § 1446(a), copies of the docket sheet and all process, pleadings, and orders served on CVS in the state court action are attached as **Exhibit A**.

## II.     TIMELINESS OF REMOVAL

16.     Plaintiff served the FAC on CVS on May 20, 2019.

17.     In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed within 30 days of service of Plaintiff's FAC. *See Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

18.     "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(C).

19.     CVS has not responded to the FAC in state court.

## III.    PROPRIETY OF VENUE

20.     Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the suit has been pending is in this district.

## IV.     BASIS OF REMOVAL

21.     Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present substantial federal questions under the CSA, 21 U.S.C. §§ 801, *et seq.*

22.     The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

23.     "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc.* v. *Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

24.     Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc.* v. *Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see also Gully* v. *First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").[2]

---

[2] A defendant need not overcome any artificial presumptions against removal or in favor of remand. In *Breuer* v. *Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's instructions in *Shamrock Oil & Gas Corp.* v. *Sheets*, 313 U.S. 100 (1941) that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand. *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional

6

25.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn* v. *Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258.

26.     As set forth below, this case meets all four requirements.[3]

27.     Although Plaintiff pleads some of their theories of recovery against the Distributor Defendants as state law claims, they base the underlying theory of liability on the Distributor Defendants' alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA, *i.e.*, that a portion of their

---

statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

In *Mims* v. *Arrow Financial Services, LLC*, the Court held: "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331." 565 U.S. 368, 379 (2012) (internal quotation marks and alterations omitted).

[3] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiff's underlying claims. *See Gunn* v. *Minton*, 568 U.S. 251, 260 (2013) ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

6858221.1

otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of suspicious orders that the Distributor Defendants allegedly had a duty to identify, report, and then not ship.

28.     The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the CSA, 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations. *See, e.g.*, FAC ¶ 81 (alleging that the Distributor Defendants owe a duty "to monitor, detect, investigate, refuse to fill, and report suspicious orders of prescription opioids" citing to 21 U.S.C. § 823, 21 C.F.R. 1301.47); FAC ¶ 90 (alleging that a Distributor Defendant failed to "maintain a compliance program designed to detect and prevent diversion of controlled substances, inform the DEA of suspicious orders required by 21 C.F.R § 1301.74(b), and follow the procedures established by its Controlled Substances Monitoring Program").

29.     The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice. Specifically, the DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses. *See Masters Pharm., Inc.* v. *DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (DEA July 3, 2007), as source of the

DEA's "Shipping Requirement"). *See, e.g.*, FAC ¶¶ 81-94 (alleging that the Distributor Defendants distributed prescription opioids even though they were on notice that "they were distributing levels of opioid medications that far exceeded the legitimate needs of the State of Texas, including to employees and/or members of the Plaintiff").

30.     Plaintiff's theories of liability against the Distributor Defendants, as pled in the FAC, are predicated on allegations that the Distributor Defendants breached alleged duties under the CSA to implement effective controls to detect and report "suspicious" pharmacy orders for prescription opioids and—crucial to Plaintiff's claims—to refuse to ship such orders to Texas pharmacies.

31.     Specifically, Plaintiff invokes federal law and alleges that the Distributor Defendants violated federal law with, among others, the following allegations:

> a.     "The Distributor Defendants played an integral role in distributing opioids to employees and/or members of Plaintiff." FAC ¶ 80.
>
> b.     "The Distributor Defendants owe a duty under federal law (21 USCA §823, 21 CR 1301.74) to monitor, detect, investigate, refuse to fill and report suspicious orders of prescription opioids." FAC ¶ 81.
>
> c.     "The Distributor Defendants were each on notice that the controlled substances they distributed were susceptible to abuse

9

and overuse and were not effective for long-term use." FAC ¶ 82.

d.   "The Distributor Defendants were each on notice that there was an alarming and suspicious increase in opioid distribution to retailers within the State of Texas." FAC ¶ 83.

e.   "As entities involved in the distribution of opioid medications, Distributor Defendants were engaged in abnormally and/or inherently dangerous activity and had a duty of care under Federal law." FAC ¶ 84.

f.   "The Distributor Defendants had a duty to monitor suspicious or alarming orders of opioid pharmaceuticals and to report suspicious orders to the proper authorities and governing bodies, including the Drug Enforcement Agency (DEA)." FAC ¶ 85.

g.   "The Distributor Defendants failed in their duty to take action to prevent or reduce the distribution of these drugs." FAC ¶ 86.

h.   "The Distributor Defendants were in a unique position and had a duty to monitor, report, or otherwise limit the flow of these drugs throughout the State of Texas." FAC ¶ 87.

i.   "The Distributor Defendants were warned in 2006 and 2007 by the DEA about their responsibility to avoid filling suspicious orders." FAC ¶ 88.

j.   "The Distributor Defendants, in the interest of their own massive profits, intentionally failed in this duty." FAC ¶ 89.

10

k.   "The extraordinary increase in the volume of opioid pain medications distributed to Texas retailers should have put the Distributor Defendants on notice to investigate and report such orders." FAC ¶ 92.

l.   "The Distributor Defendants delivered an excessive and unreasonable amount of opioid pain medications to retailers in the State of Texas, which was a proximate cause of Plaintiff paying for inappropriate opioid prescriptions." FAC ¶ 93.

m.   "The Distributor Defendants knew or should have known that they were distributing levels of opioid medications that far exceeded the legitimate needs of the State of Texas, including to employees and/or members of Plaintiff." FAC ¶ 94.

32.   Although Plaintiff cites, in passing, to a Texas state statute that it claims governs the distribution of prescription opioids, FAC ¶ 322, Plaintiff does not identify a state law source for a requirement that wholesale pharmaceutical distributors report, halt, or "refuse to fill" suspicious orders from registered pharmacies, FAC ¶ 81.[4]

---

[4] Specifically, Plaintiff cites to the Texas Controlled Substances Act §§ 481.128(a)(1) and 481.071. *See* FAC ¶¶ 322-25. None of these provisions establishes a duty to report or halt suspicious orders. Section 481.128(a)(1) provides that "[a] registrant or dispenser commits an offense if the registrant or dispenser knowingly . . . distributes, delivers, administers or dispenses a controlled substance in violation of Sections 481.070-481.075," and section 481.071, in relevant part, provides that "a practitioner . . . may not prescribe, dispense, deliver, or administer a controlled substance or cause a controlled substance to be administered under the

6858221.1

33.     Plaintiff's theory of liability also relies on an expansive reading of federal law that calls into question an agency determination. Plaintiff alleges not only that the Distributor Defendants should have detected and reported discrete suspicious orders by their respective individual pharmacy customers, but that the Distributor Defendants should have recognized that the *total volume* of prescription opioids distributed by *all* wholesalers throughout the State of Texas was excessive. *See, e.g.*, FAC ¶ 87 ("The Distributor Defendants were in a unique position to and had a duty to monitor, report, or otherwise limit the flow of these drugs throughout the State of Texas."); FAC ¶ 92 ("The extraordinary increase in the volume of opioid medications distributed to Texas retailers should have put the Distributor Defendants on notice to investigate and report such orders."); FAC ¶ 93 ("The Distributor Defendants delivered an excessive and unreasonable amount of opioid pain medications to retailers in the State of Texas . . . ."); FAC ¶ 94 ("The Distributor Defendants knew or should have known that they were distributing levels of opioid medications that far exceeded the legitimate needs of the State of Texas . . . .").

34.     To succeed on that theory, Plaintiff would thus have to show that the total quantity of prescription opioids that all pharmaceutical distributors distributed was excessive or unreasonable. However, the total amount of prescription opioids distributed in any given year turns on annual aggregate production quotas established by the DEA. Specifically, the DEA must "determine

---

practitioner's direction and supervision except for a valid medical purpose and in the course of medical practice."

the total quantity of each basic class of controlled substance listed in Schedule I or II necessary to be manufactured during the following calendar year to provide for the estimated medical, scientific, research and industrial needs of the United States, for lawful export requirements, and for the establishment and maintenance of reserve stocks." 21 C.F.R. § 1303.11(a). In making this determination, the DEA must consider "[p]rojected demand" for such substances. 21 C.F.R. § 1303.11(b). Thus, to show that the total quantity of prescription opioids that the Distributor Defendants distributed was unreasonable, Plaintiff would have to show that the annual aggregate production quotas set by the DEA, pursuant to a federal statute, were themselves unreasonable.[5]

35.    The federal questions presented by Plaintiff's claims therefore are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

36.    *First*, Plaintiff's state law claims "necessarily raise" federal questions because "the right to relief depends upon the construction or application of federal law." *PNC Bank, N.A.* v. *PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (internal quotations and citation omitted); *see also N. Carolina ex rel. N.*

---

[5] Furthermore, 21 U.S.C. § 827(d)(1) requires the Distributor Defendants to report to the DEA "every sale, delivery or other disposal" by them of prescription opioids. In other words, it has been the case for years that each Distributor Defendant has reported to the DEA the total volume of prescription opioids it distributed. To succeed on its theory of liability that the Distributor Defendants should have recognized and reported that the total volume of prescription opioids was unreasonable, Plaintiff would have to show that the Distributor Defendants' existing reporting to the DEA was inadequate.

13

*Carolina Dep't of Admin.* v. *Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *Virgin Islands Hous. Auth.* v. *Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

37.     As pleaded, Plaintiff's claims against the Distributor Defendants requires Plaintiff to establish that the Distributor Defendants breached duties under federal law by failing to report and stop shipments of otherwise lawful orders of controlled substances into Texas.

38.     For example, Plaintiff alleges that Defendants "provided millions of opioid prescription drugs to countless pharmacies nationwide, and specifically throughout Texas, without accountability and despite the Defendants' knowledge of suspicious orders," FAC ¶ 9, and that the Distributor Defendants "failed to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates as required under the Controlled Substances Act." FAC ¶ 24. To establish public nuisance or negligence, Plaintiff would have to show that the Distributor Defendants failed to report and halt suspicious orders for prescription opioids as

14

purportedly required *by federal law*. And, as noted, the alleged duty to halt or refuse to fill shipments of suspicious orders arises (if at all) under the federal CSA— *not* under state law. Thus, although plaintiffs are masters of their complaints, and they "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc.* v. *Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiff here alleges violations of federal law as the basis for its purported state-law claims.[6]

39.    Similarly, Plaintiff's claims that the Distributor Defendants shipped "excessive" quantities of prescription opioids into Texas, FAC ¶ 93, require Plaintiff to show that the aggregate production quotas set by the DEA pursuant to a federal statute were unreasonable.

40.    In pleading its causes of action, Plaintiff claims that the Distributor Defendants "delivered an excessive and unreasonable amount of opioids medications to retailers in the State of Texas" and "knew or should have known that they were distributing levels of opioid medications that far exceeded the legitimate needs of the State of Texas . . . ." FAC ¶¶ 93-94.

---

[6] Furthermore, it is not necessary for federal jurisdiction that CVS establish that all of Plaintiff's counts against it raise a federal question. Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal-question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago* v. *Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

Because the Court has original jurisdiction over at least one count here, it has supplemental jurisdiction over Plaintiff's remaining counts against the Distributor Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a).

6858221.1

41.     But as noted, the annual aggregate production quotas for prescription opioids are established by the DEA under 21 C.F.R. § 1303.11. The total amount of prescription opioids distributed by pharmaceutical distributors in any given year also turns on these aggregate quotas. Accordingly, to prevail on its claims, Plaintiff needs to show that the DEA's aggregate production quotas, set pursuant to a federal statute, were "excessive," FAC ¶ 93. Thus, Plaintiff's causes of action "necessarily turn[] on some construction of federal law." *Alcoa Power Generating, Inc.*, 853 F.3d at 146.

42.     In sum, the Plaintiff's Complaint necessarily raises federal issues—namely, whether the Distributor Defendants violated the CSA by failing to prevent or halt suspicious orders for prescription opioids, and whether compliance with production quotas set by the DEA under the CSA was unreasonable.

43.     *Second*, these federal issues are "actually disputed" because the parties disagree as to the existence and scope of alleged duties arising under the CSA and whether the Distributor Defendants violated their duties that, as Plaintiff alleges, arise only under the CSA. Indeed, these federal issues are the "central point of dispute." *Gunn*, 568 U.S. at 259.

44.     *Third*, the federal issues presented by Plaintiff's claims are "substantial." "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve

16

the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260-62 (internal quotation and citation omitted). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312.

45.     Plaintiff's theories of the Distributor Defendants' liability necessarily require that a court determine the existence and scope of the Distributor Defendants' obligations under federal law because regulation of controlled substances is first and foremost federal regulation. Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control." H.R. Rep. No. 1444, 91st. Cong., 2nd Sess. 1970, *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72.

46.     Plaintiff's theories of the Distributor Defendants' liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder* v. *Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc.* v. *UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014). The CSA itself notes that "illegal importation,

17

manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801. Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson* v. *Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim "raises a substantial federal question-the interpretation of" federal statute "over which the District Court properly exercised removal jurisdiction").

47.     Plaintiff's attempt to enforce the CSA raises substantial federal questions even though the CSA does not provide for a private right of action. In 2005, in *Grable*, the Supreme Court held that lack of a federal cause of action does *not* foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent," and "convert[ ] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also, e.g.*, *Ranck* v. *Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *4-5 (D. Or., May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

48.     Removal is particularly appropriate here because Plaintiff's action is identical to the nearly 2,000 opioid-related actions pending in the MDL in the Northern District of Ohio. Indeed, Plaintiff acknowledges that opioid use and addiction is not merely a local issue, but a "national public health emergency," or "national epidemic." FAC ¶¶ 1, 4. The MDL judge, Judge Polster, is attempting to achieve a national solution to this nationwide problem.[7]

49.     *Fourth*, and finally, the federal issues also are capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to the DEA's authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA—applies them. Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

50.     In summary, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also, e.g.*, *PNC Bank, N.A.* 189 F. App'x at 104 n.3 (state

---

[7] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

6858221.1

law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *New York ex rel. Jacobson*, 824 F.3d at 315-18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore* v. *Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'" (citation omitted)); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *Ranck* v. *Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *5 (D. Or., May 2, 2017) (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

51.     To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

## V.     OTHER REMOVAL ISSUES

52.     In accordance with 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served in this action join in or consent to this removal.

6858221.1

53.     The following Defendants have been served in this action and consent to removal, as indicated by their counsel's signatures below: Walgreens Boots Alliance, Inc.; Walgreen Co.; Cardinal Health, Inc.; Cephalon, Inc.; Teva Pharmaceuticals USA, Inc.; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Actavis LLC;  Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Noramco, Inc; McKesson Corporation.

54.     The following Defendants have not been properly served, and thus their consent to removal is not required: Qualitest Pharmaceuticals, Inc.; Allergan plc f/k/a Actavis plc; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Rhodes Pharmaceuticals L.P.; Teva Pharmaceutical Industries Ltd.[8] The Defendants listed in this paragraph expressly reserve and do not waive all defenses related to service of process and personal jurisdiction.

55.     The following Defendants have not been properly served, and thus their consent to removal is not required: Richard S. Sackler.

56.     By filing this Notice of Removal, neither CVS nor any other Defendant waives any defense that may be available to them, and Defendants expressly

---

[8] Teva Pharmaceutical Industries Ltd. ("Teva Ltd") is a foreign company and it is not subject to personal jurisdiction in the United States.  Teva Ltd. disputes that it has been properly served and expressly reserves all defenses, including those related to personal jurisdiction and service of process.

6858221.1

reserve all such defenses, including those related to personal jurisdiction and service of process.

57.    If any question arises as to propriety of removal to this Court, CVS requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

58.    Pursuant to 28 U.S.C. § 1446(d), CVS will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff. CVS reserves the right to amend or supplement this Notice.

**WHEREFORE**, CVS removes this action from the 152nd Judicial District Court for Harris County, Texas, MDL Master Cause No. 2018-63587, to this Court.

Dated:    June 6, 2019                        Respectfully submitted,

/s/  Mark E. Torian
Mark E. Torian
(Tx. Bar No. 24028051)
Attorney In Charge
BRADLEY ARANT BOULT CUMMINGS LLP
4400 Renaissance Tower
1201 Elm Street
Dallas, TX  75270
(214) 939-8700
(214) 939-8787 (fax)
mtorian@bradley.com

Conor B. O'Croinin
ZUCKERMAN SPAEDER LLP
100 E. Pratt Street, Suite 2440
Baltimore, MD  21202
(410) 949-1160
cocroinin@zuckerman.com

*Attorneys for Defendants CVS Health Corporation, CVS Pharmacy, Inc., and CVS TN Distribution, L.L.C.*

|  |  |
|---|---|
|  |  |

23

**CONSENT OF OTHER DEFENDANTS:**

*/s/ Mark S. Cheffo*
Mark S. Cheffo*
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036-6797
(212) 698-3500
(212) 698-3599 (fax)
Mark.Cheffo@dechert.com

Lindsey B. Cohan
DECHERT LLP
300 W. 6th Street, Suite 2010
Austin, TX 78701-2916
(512) 394-3027
(512) 294-3001 (fax)
Lindsey.Cohan@dechert.com

*\* denotes national counsel who will seek pro hac vice admission*

*Attorneys for Purdue Pharma L.P.; Purdue Pharma Inc.; and The Purdue Frederick Company, Inc.*

6858221.1

*/s/ Nancy L. Petterson*
Nancy L. Patterson
Texas Bar No. 15603520
Christina M. Vitale
Texas Bar No. 24077610
MORGAN LEWIS BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002
(713) 890-5000
(713) 890-5001 (fax)
nancy.patterson@morganlewis.com
christina.vitale@morganlewis.com

Steven A. Reed*
MORGAN LEWIS BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
(215) 963-5001 (fax)
steven.reed@morganlewis.com

Brian M. Ercole*
MORGAN LEWIS BOCKIUS LLP
200 South Biscayne Boulevard, Suite 5300
Miami,  FL 33131-2339
(305) 415-3000
(305) 415-3001 (fax)
brian.ercole@morganlewis.com


*\* denotes national counsel who will seek pro hac vice admission*

*Attorneys for Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Actavis LLC, Actavis Pharma, Inc. f/k/a Watson Pharma, Inc., and Watson Laboratories, Inc.*

6858221.1

*/s/ Jeffrey R. Parsons*
Jeffrey R. Parsons
Roger L. McCleary
James C. Burnett
PARSONS MCENTIRE MCCLEARY PLLC
One Riverway, Suite 1800
Houston, TX 77056
(713) 960-7315
(713) 960-7347 (fax)
jparsons@pmmlaw.com
rmcleary@pmmlaw.com
jburnett@pmmlaw.com

Rocky C. Tsai (CA Bar No. 221452)*
ROPES &GRAY LLP
Three Embarcadero Center
San Francisco, CA 94111
(415) 315-6300
(415) 315-6350 (fax)
rocky.tsai@ropesgray.com

Erin R. Macgowan (MA Bar No. 685746)*
ROPES &GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000
(617) 951-7050 (fax)
erin.macgowan@ropesgray.com
*\* denotes national counsel who will seek pro hac vice admission*

*Attorneys for Mallinckrodt LLC*

6858221.1

*/s/ Hannah Sibiski*
Hannah DeMarco Sibiski
S.D. Texas Bar No. 559957
Texas State Bar No. 24041373
hannah.sibiski@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, TX  77002
Tel:  (713) 576-2416
Fax:  (713) 576-2499

John D. Lombardo*
john.lombardo@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street, 44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4000

*\* denotes national counsel who will seek pro hac vice admission*

*Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.*

27

_/s/ Michael W. Mengis_
Michael W. Mengis, _attorney-in-charge_
mmengis@bakerlaw.com
State Bar No. 13941040
Matt R. Raley
mraley@bakerlaw.com
State Bar No. 24051224
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, Texas 77002
Phone:  713.751.1600
Fax:     713.751.1717

Enu Mainigi*
emainigi@wc.com
F. Lane Heard*
lheard@wc.com
Steven M. Pyser*
spyser@wc.com
Ashley W. Hardin*
ahardin@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Phone:  202.434.5000
Fax:     202.434.5029

_* denotes national counsel who will seek pro hac vice admission_

_Attorneys for Cardinal Health, Inc._

6858221.1

|  | */s/ Stan Perry*<br>Stan Perry<br>State Bar No. 15799920<br>sperry@reedsmith.com<br>Michael H. Bernick<br>State Bar No. 24078227<br>mbernick@reedsmith.com<br>Mary M. Balaster<br>State Bar No. 24084054<br>mbalaster@reedsmith.com<br>REED SMITH LLP<br>811 Main Street, Suite 1700<br>Houston, Texas 77002-6110<br>Telephone:      713.469.3800<br>Facsimile:      713.469.3899<br><br>*Counsel for AmerisourceBergen Drug Corporation* |
|  | */s/ Alper T. Ertas*<br>Alper T. Ertas<br>VENABLE LLP<br>505 Montgomery Street, Suite 1400<br>San Francisco, CA  94111<br>(415) 343-3214<br>(415) 653-3755 (fax)<br>atertas@venable.com<br><br>John A. McCauley*<br>James K. O'Connor*<br>VENABLE LLP<br>750 East Pratt Street, Suite 900<br>Baltimore, MD  21202<br>(410) 244-7655<br>(410) 244-7742 (fax)<br>jmccauley@venable.com<br><br>*\* denotes National Counsel who will seek pro hac vice admission*<br><br>*Attorneys for Abbott Laboratories* |

29

6858221.1

*[s] Joel C. Simon*
Joel C. Simon
State Bar No. 24046850
Federal I.D. No. 612288
FERNELIUS SIMON MACE ROBERTSON PERDUE PLLC
1221 McKinney, Suite 3200
Houston, Texas 77010-3095
713-654-1200
713-654-4039 (fax)
joel.simon@trialattorneytx.com

Lester C. Houtz*
Alex Harris*
Bartlit Beck LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
(303) 592-3100
(303) 592-3140 (fax)
les.houtz@bartlitbeck.com
alex.harris@bartlitbeck.com

*\* denotes National Counsel who will seek pro hac vice admission*

*Attorneys for Defendants Walgreens Boots Alliance, Inc. and Walgreen Co.*

6858221.1

| | |
|---|---|
| | */s/ Steven F. Napolitano*<br>SKARZYNSKI MARICK & BLACK LLP<br>Steven F. Napolitano*<br>Tanya C. Rolo*<br>Andrew J. Nadel*<br>One Battery Park Plaza, 32nd Floor<br>New York, NY 10004<br>(212) 820-7700 (telephone)<br>(212) 820-7740 (facsimile)<br>snapolitano@skarzynski.com<br>trolo@skarzynski.com<br>anadel@skarzynski.com<br><br>*Denotes national counsel who will seek pro hac vice admission.*<br><br>*Counsel for Rhodes Pharmaceuticals L.P.* |

6858221.1

*/s/ Nicholas A. Sarokhanian*
J. Matthew Donohue (OSB No. 065742)*
Joseph L. Franco (OSB No. 073913)*
HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Ave.
Portland, OR 97204
Tel:  (503) 243-2300
Fax: (503) 241-8014
Email: matt.donohue@hklaw.com
Email: joe.franco@hklaw.com

Nicholas A. Sarokhanian
Texas State Bar No. 24075020
S.D. Tex. Bar No. 1138421
HOLLAND & KNIGHT LLP
200 Crescent Court, #1600
Dallas, TX  75201
Tel:  (214) 964-9496
Fax: (214) 964-9501
nicholas.sarokhanian@hklaw.com

*denotes national trial counsel who will seek
pro hac vice admission*

*Counsel for INSYS Therapeutics, Inc. and
INSYS Manufacturing, LLC*

6858221.1

_s/ Stephen E. McConnico_
Stephen E. McConnico
Asher B. Griffin
John W. Ellis
SCOTT DOUGLAS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
(512) 495-6300
(512) 495-6399 (fax)
smcconnico@scottdoug.com
agriffin@scottdoug.com
jellis@scottdoug.com

Charles C. Lifland*
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
(213) 430-6000
clifland@omm.com

_* denotes national counsel who will seek pro hac vice admission_

_Attorneys for Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc._

33

|  | */s/ Claude F. Reynaud* |
|  | Claude F. Reynaud |
|  | BREAZEALE, SACHSE & WILSON, L.L.P. |
|  | 301 Main Street, Suite 2300 |
|  | Baton Rouge, LA  70801 |
|  | Phone: 225.381.8012 |
|  | Fax: 225.381.8029 |
|  | claude.reynaud@bswllp.com |
|  |  |
|  | *Attorneys for Brenn Distribution, Inc. f/k/a Propst Distribution, Inc. f/k/a Qualitest Pharmaceuticals, Inc..* |

6858221.1

/s/   *Craig Smyser*
Craig Smyser
Texas Bar No. 18777575
Fed. Bar No. 848
csmyser@skv.com
Tyler G. Doyle
Texas Bar No. 24072075
Fed. Bar No. 1373873
tydoyle@skv.com
David Isaak
Texas Bar No. 24012887
Fed. Bar No. 26694
disaak@skv.com
Razvan Ungureanu
Texas Bar No. 24085630
Fed. Bar No. 2006928
razvan@skv.com
Kristin Adler
Texas Bar No. 793233
Fed. Bar No. 21273
kadler@skv.com
Michelle S. Stratton
Texas Bar No. 24085606
Fed. Bar No. 2592215
mstratton@skv.com
Crystal Robles
Texas Bar No. 24083754
Fed. Bar No. 2070295
crobles@skv.com
Smyser Kaplan & Veselka L.L.P.
700 Louisiana, Suite 2300
Houston, Texas 77002
Phone:  713-221-2300
Fax:  713-221-2320

*Attorneys for McKesson Corporation*

6858221.1

*/s/ Matthew A. Durfee*
Matthew A. Durfee
State Bar No. 24069654
ALSTON & BIRD LLP
2200 Ross Avenue, Suite 2300
Dallas, Texas 75201
Telephone: 214-922-3400
Facsimile: 214-922-3899
matt.durfee@alston.com

Daniel G. Jarcho*
D.C. Bar No. 391837
ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3254
Facsimile: (202) 239-3333
daniel.jarcho@alston.com

Cari K. Dawson*
Georgia Bar No. 213490
Jenny A. Hergenrother*
Georgia Bar No. 447183
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
cari.dawson@alston.com
jenny.hergenrother@alston.com

*Attorneys for Defendant Noramco, Inc.*

6858221.1

## CERTIFICATE OF SERVICE

I, Mark E. Torian, hereby certify that the foregoing document will be served via the Court's ECF system to ECF registrants.

/s/ Mark E. Torian
Mark E. Torian

6858221.1